

ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

March 12, 2007

The Honorable Rodney Ellis
Chair, Committee on Government Organization
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0530

Re: Whether article XVI, section 40(b) of the Texas Constitution applies in certain circumstances (RQ-0530-GA)

Dear Senator Ellis:

You ask whether article XVI, section 40(b) of the Texas Constitution, which "relates to the compensation of persons who serve as members of governing bodies and also receive all or part of their compensation from the State of Texas," applies in certain circumstances.[1] *See* TEX. CONST. art. XVI, § 40(b). Your question is based upon issues raised by the former Laredo City Attorney (the "City Attorney") concerning four members of the Laredo City Council who receive all or part of their compensation from state funds.[2]

## I. Factual Background

The United Independent School District ("UISD") employs three of the Laredo City Council members, and Texas A&M International University ("TAMIU") employs a fourth. *See* Request Letter, *supra* note 2, at 2–3. The City Attorney described the four council members' employments:

> 1. Council Member A is employed by the [UISD] . . . as a Registrar and as an Assistant Boys Track Coach. Based on the fact that he is an assistant coach teaching physical education, and that he is not required to be certified as a teacher, similar to substitute teachers, the city pays him for his services as a city council member.
>
> 2. Council Member B is also employed by the UISD . . . [as] an administrator, specifically, the Support Services Manager. He is not

---

[1]Letter from Honorable Rodney Ellis, Chair, Committee on Government Organization, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas (Sept. 11, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us).

[2]*See* Letter from Jaime L. Flores, Laredo City Attorney, to Honorable Judith Zaffirini, Texas State Senate (Aug. 16, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

paid by the city for his services as a city council member; but he is reimbursed for any actual expenses that he incurs that are related to his service as a member of the council.

3. Council Member C is also employed by the UISD . . . [as] an administrator, specifically the Director of UISD's Support Services Department. He is not paid by the city for his services as a city council member; but he is reimbursed for any actual expenses that he incurs that are related to his service as a member of the council.

4. Council Member D is employed by [TAMIU as] a full-time professor teaching marketing and possibly other courses at the University. He is not paid for his services as a city council member; he is only reimbursed for any actual expenses that he incurs that are related to his service as a member of the council.

*Id.*

## II.     Article XVI, Section 40(b) of the Texas Constitution

Article XVI, section 40(b) expressly permits an individual who receives compensation from the State of Texas to serve as a member of the governing body of a local governmental entity but prohibits the individual from receiving a salary for serving on the governing body unless the individual receives compensation from the state for work performed in certain capacities:

> State employees or other individuals who receive all or part of their compensation either directly or indirectly from funds of the State of Texas and who are not State officers[] shall not be barred from serving as members of the governing bodies of school districts, cities, towns, or other local governmental districts. Such State employees or other individuals may not receive a salary for serving as members of such governing bodies, except that:
>
> > (1) a schoolteacher . . . or retired school administrator may receive compensation for serving as a member of a governing body of a school district, city, town, or local governmental district . . . ; and
> >
> > (2) a faculty member or retired faculty member of a public institution of higher education may receive compensation for serving as a member of a governing body of a water district . . . .

TEX. CONST. art. XVI, § 40(b). Employees of public school districts and public institutions of higher education receive "all or part of their compensation either directly or indirectly from funds of the

State of Texas" and thus are subject to article XVI, section 40(b). *See Tilley v. Rogers*, 405 S.W.2d 220, 224 (Tex. Civ. App.—Beaumont 1966, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. JM-1266 (1990) at 3.

## III.    Analysis

The City Attorney did not ask about Council Member A, but assumed that his position as a coach renders him a "schoolteacher" for purposes of article XVI, section 40(b)(1). TEX. CONST. art. XVI, § 40(b)(1); *see* Request Letter, *supra* note 2, at 2. He suggested that Council Member A, who he told us is assigned "duties and responsibilities and . . . is evaluated and paid for his performance as a Registrar and as an Assistant Boys Track Coach[,] . . . teach[es] physical education" in his coaching position. Request Letter, *supra* note 2, at 2. The acting city attorney has informed us that Council Member A's coaching duties, and thus "teaching [of] physical education," occur outside of regular school hours, but we have not been informed whether members of the track team may receive credit for their participation in the track program.[3] Further, the City Attorney indicated that, because of this teaching role, Council Member A properly may receive a salary for his city council service. *See id.* He first asked two questions about Council Members B and C, which can be combined and summarized as follows: if Council Member B or C were to "acquire" positions as "'coach[es]' of UIL (University Interscholastic League) events coaching UIL teams for math, debate, or other UIL events" in addition to their administrative positions, would they also qualify as "schoolteachers" for purposes of article XVI, section 40(b)(1) such that they could receive a salary for their city council service? *Id.* at 3. To respond to questions about Council Members B and C, it is necessary to examine the assumption that Council Member A is a schoolteacher for purposes of article XVI, section 40(b)(1) solely on the basis of his coaching duties.

### A.    Whether a coach is a schoolteacher for purposes of article XVI, section 40(b)(1)

The key to resolving this issue is to determine the definition of the term "schoolteacher" for purposes of article XVI, section 40(b)(1). A court presumes that the language of the Texas Constitution has been "carefully selected" and thus construes constitutional terms "as they are generally understood." *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). A court relies "heavily on the plain language of the Constitution's literal text." *Id.* In interpreting constitutional provisions and terms, a court uses "the same guidelines . . . as [it uses] in interpreting statutes." *Rooms with a View, Inc. v. Private Nat'l Mortgage Ass'n*, 7 S.W.3d 840, 844 (Tex. App.—Austin 1999, pet. denied).

No court has construed the term "schoolteacher" as it is used in article XVI, section 40(b)(1). In *Smith v. Alanis* a Texas court concluded, in the context of Education Code chapter 21, that a person hired as head football coach and athletic director, who was a full-time professional employee required to hold a teaching certificate, is subject to the statutory requirement that teachers new to a school district be employed under a probationary contract, but that case is not dispositive here. *See Smith v. Alanis*, No. 03-01-00713-CV, 2002 WL 1729289, at *3–*4 (Tex. App.—Austin July 26,

---

[3]*See* Telephone Interview with Valeria Acevedo, Acting Laredo City Attorney, in Laredo, Tex. (Jan. 29, 2007).

2002, no pet.) (not designated for publication); *see also* TEX. EDUC. CODE ANN. §§ 21.102(a), .202(a) (Vernon 2006) (requiring the use of probationary contracts in certain circumstances). First, the coach in *Smith* was a full-time professional employee who was required to hold a teaching certificate, while the coach about whom the City Attorney asked is not required to hold a teaching certificate and in fact does not. *See Smith*, 2002 WL 1729289, at *4; Request Letter, *supra* note 2, at 2. And second, the statutory provisions requiring new teachers to be employed under probationary contracts serve a purpose different from article XVI, section 40(b)(1) of the Texas Constitution. *Compare* TEX. EDUC. CODE ANN. §§ 21.102(a), .202(a) (Vernon 2006) (requiring the use of probationary contracts for new teachers), *with* TEX. CONST. art. XVI, § 40(b)(1) (relating to a schoolteacher's service on a governmental body).

This office has considered the meaning of the term "schoolteacher" twice. In 2002 this office determined that the term does not encompass "an instructor or professor at a state university," relying in part on the plain and common meaning of the term as reflected in the dictionary, which describes a schoolteacher as "a person who teaches in a school below the college level." Tex. Att'y Gen. Op. No. JC-0577 (2002) at 2 (quoting AMERICAN HERITAGE DICTIONARY 1560 (4th ed. 2000)); *see also Mikael v. Equitable Sec. Co.*, 74 S.W. 67, 68 (Tex. Civ. App. 1903, writ ref'd) (stating that an undefined constitutional term "should be given its ordinary and usual signification"). More recently, a 2006 opinion, GA-0394, concludes that the term "schoolteacher" includes a substitute teacher,[4] again relying in part on similar dictionary definitions. *See* Tex. Att'y Gen. Op. No. GA-0394 (2006) at 2 (quoting NEW OXFORD AMERICAN DICTIONARY 1526 (2001); AMERICAN HERITAGE DICTIONARY 1560 (4th ed. 2000)). In addition to relying on dictionary definitions, both opinions examined the history of the constitutional provision, adopted in 2001, and GA-0394's discussion in particular provides some guidance here. *See* Tex. Att'y Gen. Op. Nos. GA-0394 (2006) at 2–3, JC-0577 (2002) at 2–4. From the legislative history and the information put before the voters, Attorney General Opinion GA-0394 determines that "one purpose of the amendment [to article XVI, section 40(b)] was to enlarge the group of persons available for service on local governmental bodies." Tex. Att'y Gen. Op. No. GA-0394 (2006) at 2. "Both the popular definitions of the term 'schoolteacher' and the information prepared by the Legislative Council [for the voters] indicate that the voters who adopted the amendment favored a broad and encompassing definition of the term," and GA-0394 concludes that the term is therefore "broad enough to include a substitute teacher within its ambit." *Id.* at 3.

Thus, under GA-0394, substitute teachers, who may be hired by a school district although they have not obtained a certificate as the law requires of teachers, qualify as schoolteachers for purposes of article XVI, section 40(b)(1). *See id.*; *see also* TEX. EDUC. CODE ANN. § 21.003(a) (Vernon 2006) (requiring a teacher to hold a teaching certificate). The City Attorney apparently inferred from GA-0394 that a coach, who, according to the City Attorney, "teach[es] physical

---

[4]Opinion GA-0394 noted that "[t]he term 'substitute teacher' is not defined in any Texas statute or regulation" and is referenced only once in statutes, where section 22.051(a)(1) of the Education Code defines the term "professional employee of a school district" for purposes of provisions exempting such professional employees from liability for certain actions, to expressly include "a substitute teacher." Tex. Att'y Gen. Op. No. GA-0394 (2006) at 2; *see* TEX. EDUC. CODE ANN. § 22.051(a)(1) (Vernon 2006).

education" in his capacity as coach of an extracurricular sport, likewise qualifies as a schoolteacher for purposes of article XVI, section 40(b)(1). *See* Request Letter, *supra* note 2, at 2.

Although, as GA-0394 states, the constitutional term "schoolteacher" has a "broad and encompassing definition," the term is not without limit. Tex. Att'y Gen. Op. No. GA-0394 (2006) at 3. Significantly, article XVI, section 40(b)(1) uses the term "schoolteacher" as opposed to a facially broader term, such as "school professional" or "school employee," indicating that only a limited class of school district employees are within its scope. *See* TEX. CONST. art. XVI, § 40(b)(1). In addition, article XVI, section 40(b)(1) does not include current school administrators, but only retired school administrators. *See id.* Thus, the constitution's plain language carefully circumscribes the class of school employees to whom article XVI, section 40(b)(1) applies.

In our opinion, whether a particular individual who receives compensation from the State of Texas is a schoolteacher for purposes of article XVI, section 40 of the Texas Constitution depends upon whether the individual is employed to instruct students in a school setting, which may include an athletic facility, as a result of which participants may receive credit toward fulfilling their curriculum requirements. In some circumstances, students may receive credit for extracurricular activities that fulfills curriculum requirements. *See* Texas Education Agency, *Curriculum -> Health and Physical Education -> Physical Education*, http://www.tea.state.tx.us/curriculum /hpe/pefaq.html (last visited Mar. 7, 2007); *see* TEX. EDUC. CODE ANN. § 28.002(a) (Vernon 2006) (requiring school districts to offer a required curriculum and an enrichment curriculum that include mathematics, science, physical education, and fine arts); 19 TEX. ADMIN. CODE § 74.1(a) (2006) (Texas Education Agency, Essential Knowledge and Skills) (same); *see also* TEX. EDUC. CODE ANN. § 33.081 (Vernon 2006) (requiring the State Board of Education to regulate participation in extracurricular activities); 19 TEX. ADMIN. CODE § 76.1001(a) (2006) (Texas Education Agency, Extracurricular Activities) (defining "extracurricular activities").

Whether a particular state employee, such as Council Member A, is employed to instruct students in a school setting as a result of which the students may receive credit, and thus whether Council Member A is a schoolteacher for purposes of article XVI, section 40 is a question of fact that cannot be determined in the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process."). Likewise, whether Council Member B or C would qualify as a schoolteacher under article XVI, section 40 were the member to acquire a position coaching a UIL event in addition to his or her administrative position will depend upon whether the council member is employed to instruct students in a school setting, as a result of which participating students may receive credit for their participation.

### B.    Whether certain expenses may be reimbursed without constituting salary for purposes of article XVI, section 40(b)(1)

The City Attorney also asked about reimbursing those council members who may not constitutionally receive a salary for their city council service. *See* Request Letter, *supra* note 2, at 3–4. The Laredo City Charter entitles city council members to "reimbursement for their actual and necessary expenses incurred in" performing their official duties. *See* LAREDO, TEX., CITY CHARTER,

art. II, § 2.02 (City Council, Compensation; Expenses), *available at* http://www.cityoflaredo.com/mayor-council/city-charter/charter1.htm (last visited Mar. 7, 2007). "[A] *mere* reimbursement of expenses does not constitute" salary for purposes of article XVI, section 40(b)(1). Tex. Att'y Gen. LO-93-033, at 1; *see also In re Carlisle*, 209 S.W.3d 93, 96 (Tex. 2006) (stating that under article III, section 19 of the Texas Constitution receiving only reimbursement and not compensation does not render an office lucrative); Tex. Att'y Gen. LO-94-072, at 3 (equating compensation with salary for purposes of article XVI, section 40). The amount of money a member of a governmental body receives as reimbursement may not exceed the actual expenses the member incurred, however. *See* Tex. Att'y Gen. LO-93-037, at 4.

The City Attorney asked whether the city may reimburse city council members for certain specific items:

> a.  . . . expenses for meals consumed by council members and their constituents at times when the council members meet with them to discuss city issues . . . [;]
>
> b.  . . . membership fees of a civic organization, such as Kiwanis, . . . if [the member] submits claims stating that he attended such meetings as a representative of the city[;]
>
> c.  . . . expenses incurred by a council member for maintenance of a home office (as defined and qualified under Internal Revenue Services rules), to the extent such home office is used for city business, including pro-rated rent or mortgage and electricity consumed . . . . For example, council member X uses 10% of his home for a certain amount of time to study the council agenda; [and]
>
> d.  . . . annual leave earned at the place of employment . . . used by a council member in order to attend to city business . . . at [the] actual workplace daily pay rate.

Request Letter, *supra* note 2, at 3–4. He further asked whether governing bodies of home-rule municipalities may "draft and enact their own ordinances setting policies for what is or is not reimbursable as actual expenses as well as set maximum amounts reimbursable per member without violating any state statute or the Texas Constitution." *Id.* at 4.

Whether a particular expense is reimbursable and not salary for purposes of article XVI, section 40(b)(1) is a question of fact that cannot be resolved in the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process."). In addition, whether a particular expense is reimbursable under a particular city charter is a question that the appropriate municipal officers, not this office, must determine in the first instance. *See* Tex. Att'y Gen. Op. No. GA-0449 (2006) at 1 (declining to construe a city charter).

As the final question suggests, a home-rule municipality may adopt reasonable ordinances delimiting expenses for which the municipality may reimburse city council members. "Home-rule cities do not depend on the legislature for specific grants of authority but, instead, have a constitutional right of self-government and look to the legislature only for specific limitations on their power." *City of Laredo v. Webb County*, No. 03-05-00168-CV, 2005 WL 3234768, at *3 (Tex. App.—Austin Dec. 1, 2005, no pet.) (not designated for publication); *accord Quick v. City of Austin*, 7 S.W.3d 109, 122 (Tex. 1998); *see also* TEX. CONST. art. XI, § 5 (authorizing the creation of home-rule municipalities). To the extent that reimbursement for various expenses constitutes a gift or grant of public funds for purely private purposes, it would contravene article III, section 52 of the Texas Constitution. *See* TEX. CONST. art. III, § 52(a) (prohibiting the Legislature from authorizing grants of public money or things of value for private purposes). But we are not aware of any other statute or constitutional provision that would restrict a home-rule municipality's authority in this regard.

## S U M M A R Y

Whether a particular state employee is a schoolteacher for purposes of article XVI, section 40 of the Texas Constitution depends upon whether the employee is employed to instruct students in a school setting, which may include an athletic facility, as a result of which participants receive credit toward fulfilling their curriculum requirements.

A home-rule municipality may adopt reasonable ordinances delimiting expenses for which the municipality may reimburse city council members consistently with article XVI, section 40(b)(1). To the extent that reimbursement for various expenses constitutes a gift or grant of public funds for purely private purposes, it would contravene article III, section 52 of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas


KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee